## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Joseph D. Cline,

        Plaintiff,

v.

FitzMark Chicago, Inc., et al.,

        Defendants.

No. 21 CV 04253

Honorable Nancy L. Maldonado

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Joseph D. Cline brings this lawsuit asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA"), and state common law for unjust enrichment and quantum meruit. (Dkt. 51.)[1] Plaintiff alleges that his former employer, Defendant FitzMark Chicago, Inc. ("FitzMark"), and its Chief Executive Officer, Defendant Mark Hurley, violated federal and state law by failing to pay him all wages he was due. Defendants have filed a motion to dismiss Plaintiff's operative Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 52.) As discussed herein, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims under the IWPCA (Count II) are dismissed with prejudice. With respect to Plaintiff's claims for violations of the FLSA (Count I), Plaintiff's claims based on Defendants' alleged failure to pay wages for the period that predates August 10, 2018, are dismissed with prejudice based on the applicable statute of limitations. However, Plaintiff may proceed at this time on his FLSA claims alleging failure to pay minimum wages for the period

---

[1] Referenced page numbers are taken from the CM/ECF header.

after August 10, 2018. Further, the motion to dismiss is denied as to Plaintiff's claims for unjust enrichment and quantum meruit (Count III). Defendants must answer the non-dismissed portions of the Third Amended Complaint within 21 days of this order. An initial status conference is set for April 28, 2023 at 10:00 a.m. By April 21, 2023, the parties shall file a joint status report with a proposed case management schedule. In light of the resolution of the instant motion, the Court strongly encourages the parties to consider settlement. The joint status report should update the Court on the parties' settlement negotiations and whether they are interested in a settlement conference with the assigned magistrate judge.

## Background[2]

Plaintiff, a resident of Indiana, alleges he worked as an at-will employee for Defendant FitzMark, an Illinois corporation with its principal office located in Naperville, Illinois, from around April 16, 2016, through August 31, 2018. (Dkt. 51 ¶¶ 6-11, 16.)[3] Plaintiff alleges that Defendants agreed to pay him a salary of $1,850.00 per week for all his time worked as an employee, and claims that FitzMark made its last direct deposit payment for Plaintiff's salary on or around March 17, 2017. *Id.* ¶¶ 25-27. Plaintiff, however, claims that he continued working for the benefit of FitzMark and performing all his duties from March 17, 2017, through August 31, 2018, when he was ultimately terminated from employment, and that FitzMark refused to pay wages to Plaintiff during this period. *Id.* ¶¶ 29-30.

Plaintiff alleges that Defendants violated federal and state wage laws by failing to pay him for all work performed. *Id.* ¶ 33. Plaintiff further asserts that Defendants failed to maintain proper

---

[2] The Court takes the factual background from the allegations in the Third Amended Complaint ("TAC") (Dkt. 51) and assumes the allegations to be true for the purposes of the instant motion. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

[3] In addition to naming FitzMark and its CEO Hurley as defendants, the Third Amended Complaint also names as defendants unidentified Does One Through Ten, who Plaintiff asserts are believed to be various other owners, officers, directors, and/or shareholders of FitzMark who may be liable to Plaintiff. *Id.* ¶ 19.

time records and failed to record all time worked by Plaintiff, and that their actions in failing to pay wages were willful and not in good faith. *Id.* ¶¶ 34, 41, 44-45. Plaintiff argues that Defendants' actions violated the FLSA and IWPCA, and he seeks compensatory and liquidated damages. Alternatively, Plaintiff alleges that, in the event it is determined that no employment relationship between Plaintiff and FitzMark exists, Defendants are liable under a theory of unjust enrichment and quantum meruit. *Id.* ¶¶ 54-62.

Plaintiff initiated this lawsuit on August 10, 2021, and subsequently filed an Amended Complaint on August 31, 2021, asserting claims under the FLSA and IWPCA. (Dkts. 1, 8). On December 7, 2021, before either the original or Amended Complaint had been served, Plaintiff filed a Second Amended Complaint. (Dkt. 20.) Defendants accepted service of the Second Amended Complaint and proceeded to file a motion to dismiss on January 4, 2022. (Dkt. 29.) After briefing on the motion was complete, Plaintiff moved and was granted leave to file a Third Amended Complaint to add a claim for unjust enrichment and quantum meruit. (Dkt. 47.) Plaintiff filed the Third Amended Complaint on March 22, 2022, and Defendants responded with the instant motion to dismiss. (Dkts. 51, 52.)

## Legal Standards

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550

3

U.S. 544, 555 (2007); *see also Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("[A] plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.") (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

### A.  Plaintiff's FLSA Claim

Defendants raise three arguments in support of dismissal of Plaintiff's FLSA claim: (1) there is no private right of action to recover for alleged FLSA recordkeeping violations; (2) Plaintiff has not otherwise sufficiently pled facts to state an FLSA claim; and (3) even if Plaintiff has stated a claim, the FLSA's two-year statute of limitations has run, because the complaint was filed on August 10, 2021, which is more than two years after August 31, 2018, the last date for which Plaintiff alleges he was not paid wages. (Dkt. 52 at 3-5.) In response, Plaintiff concedes that he has no independent claim for a recordkeeping violation, but argues that he has otherwise stated a claim for an FLSA violation based on Defendants' failure to pay him wages. (Dkt. 57 at 6.) Regarding the applicable statute of limitations, Plaintiff argues he has alleged a willful violation of the FLSA, including by alleging that Defendants failed to keep adequate records, and that this extends the statute of limitations to three years. *Id.* at 3.

The Court finds that Plaintiff has sufficiently pled facts stating a claim under the FLSA. The FLSA is "designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001). To

advance that goal, the statute requires payment of minimum wages and overtime pay, and gives employees deprived of these payments the right to receive them. *See generally* 29 U.S.C. §§ 206, 207, 216(b). In other words, as Defendants correctly note in their motion, the FLSA is "limited to claims for unpaid minimum wages and overtime pay." *Labriola v. Clinton Entm't Mgmt., LLC*, No. 15 C 4123, 2016 WL 1106862, at *4 (N.D. Ill. Mar. 22, 2016).

Defendants point out that Plaintiff makes no specific reference to minimum wages or overtime violations in the Third Amended Complaint. (Dkt. 52 at 3.) Instead, Plaintiff generally alleges that Defendants "failed to pay wages to Plaintiff for which he is entitled for the time period March 17, 2017 through August 31, 2018," and that "Defendants violated 29 U.S.C. §207(a) by failing to pay Plaintiff for all compensable time worked." (Dkt. 51 ¶¶ 41, 43.) Defendants argue that these allegations, and the single statutory reference to the FLSA's overtime provision— 29 U.S.C. § 207(a)—are insufficient to state a claim. (Dkt 52 at 3.) Defendant asserts that, if Plaintiff is alleging a failure to pay overtime, his complaint lacks any facts that suggest he was a non-exempt employee and is entitled to the FLSA's overtime coverage. *Id.* at 4.

The Court agrees with Defendants that Plaintiff has not pled sufficient facts to state a claim for failure to pay *overtime* wages. The FLSA requires overtime pay—that is, pay at one and one-half times an employee's regular hourly wage for hours worked beyond 40 hours a week—unless one of several exemptions applies. *See Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 999 (N.D. Ill. 2018) (citing 29 U.S.C. § 207(a)(1)). Plaintiff has not alleged his weekly hours worked during the period when Defendants allegedly failed to pay him, nor has he alleged he was a non-exempt employee entitled to overtime wages, let alone any facts related to his position that would be sufficient for Defendants (or the Court) to determine whether he was a non-exempt employee. While the federal notice-pleading standard is liberal, Plaintiff must still allege facts that

support a "a reasonable inference that there was at least one workweek in which he worked more than forty hours and did not receive overtime pay." *See Frisby v. Sky Chefs, Inc*., No. 19 C 7989, 2020 WL 4437805, at *5 (N.D. Ill. Aug. 3, 2020) (citations omitted). Insofar as Plaintiff seeks overtime pay, he has failed to state a claim for relief because he has failed to allege any facts supporting an inference that he was a non-exempt employee and that he worked more than 40 hours at least one workweek without receiving overtime pay. *Compare Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 985 (N.D. Ill. 2019) (dismissing overtime claim under FLSA where plaintiffs failed to allege sufficient facts showing they were not paid overtime wages), *with Seo v. H Mart Inc*., No. 19-CV-03248, 2021 WL 5493238, at *7 (N.D. Ill. Nov. 23, 2021) (plaintiff's allegations that he was non-exempt and worked more than 40 hours each week without receiving all overtime pay he was due were sufficient to state FLSA claim).

This does not doom Plaintiff's FLSA claim, however. As noted above, the statute also requires that employees be paid minimum wages. *See* 29 U.S.C. § 206 ("Every employer shall pay to each of his employees . . . $7.25 an hour . . . ."). While Defendants are correct that Plaintiff does not specifically mention *minimum* wages in his complaint, Plaintiff has alleged that he was paid *no wages* for the period between March 17, 2017, and August 31, 2018. An allegation that an employer failed to pay any wages necessarily includes a claim that the employer failed to pay minimum wages as required under the FLSA. *See Conley v. Team Info Age*, No. 03 C 0639, 2004 WL 528004, at *1 (N.D. Ill. Jan. 28, 2004) ("The failure to pay any wages to an employee constitutes a violation of FLSA's requirement that employees are paid wages at the minimum wage.") (citing *Citicorp Indus. Credit, Inc. v. Brock*, 483 U.S. 27, 33, n.9 (1987)). It is true that Plaintiff's Third Amended Complaint specifically cites to the FLSA's overtime provision and not the provision dealing with minimum wages. (Dkt. 51 ¶ 43.) But under federal pleading standards,

plaintiffs are not required to plead legal theories or cite to a specific statute under which their claims arise; all that is required is they plead sufficient facts giving the defendant fair notice of the basis of their claims. *See Reger Dev., LLC*, 592 F.3d at 764; *Shah v. Inter-Cont'l Hotel Chi. Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) ("The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply."). Therefore, taking as true Plaintiff's allegation that he was paid no wages between March 17, 2017, and August 31, 2018, which the Court must do at this stage, the Court finds that Plaintiff has sufficiently stated a claim under the FLSA for a failure to pay minimum wages.

Turning to the statute of limitations issue, as the parties both correctly note, lawsuits under the FLSA must generally be brought within two years after the cause of action accrues. 29 U.S.C. § 255(a). However, the statute of limitations is extended to three years for causes of action arising out of a "willful violation" of the FLSA. *Id.*; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). Plaintiff filed the original complaint on August 10, 2021, and alleges he was not paid from March 17, 2017, through August 31, 2018. Thus, his claims under the FLSA are plainly untimely under the two-year statute of limitations, which would only go back to August 10, 2019. On the other hand, if Defendants' violations of the FLSA were willful, the statute of limitations would be extended to three years, meaning Plaintiff could bring claims under the FLSA for alleged willful violations that occurred after August 10, 2018—three years before the complaint was filed.

In *McLaughlin*, the United States Supreme Court held that for a violation of the FLSA to be "willful," the plaintiff must demonstrate that the employer either knew their conduct was prohibited by the FLSA or showed a reckless disregard for whether their conduct was prohibited. *See* 486 U.S. at 133; *see also Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 333 (7th Cir. 2018) ("Distinguishing 'merely negligent' from 'willful,' *McLaughlin* observed that in common usage,

7

'willful' is considered synonymous with words such as 'voluntary,' 'deliberate,' and 'intentional.'"). Plaintiff argues that he has alleged that Defendants willfully violated the FLSA by their failure to pay wages and maintain payroll records, and therefore the three-year statute of limitations should apply. (Dkt. 57 at 6.) Plaintiff cites to a string of out-of-circuit authority for the proposition that his burden to allege a willful violation is "minimal," and that a dispute over whether the employer's violation was willful is a question for the trier of fact that is improper to resolve at the pleading stage. *Id.* at 5-7 (citations omitted).

Courts within this Circuit similarly have recognized that the question of whether an FLSA violation was willful—and thus whether the applicable statute of limitations is two or three years— is a determination normally reserved for the trier of fact. *See Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 1001 (N.D. Ill. 2018) ("Plaintiff will ultimately bear the burden of proving that Defendant's conduct was willful, but that is a matter for the trier of fact to decide at a later stage.") (citing *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) ("It is the jury's province to decide which limitations period, two or three years, applies in light of the plaintiffs' evidence that the defendants acted willfully.")). Further, while the Seventh Circuit has not directly addressed the standard for pleading willfulness under the FLSA, district courts within this circuit have consistently held that a plaintiff need not allege willfulness with specificity, because a plaintiff generally "is not required to plead elements in his or her complaint that overcome affirmative defenses, such as statute-of-limitations defenses." *See generally Kammer v. CET Inc.*, No. 2:21-CV-83-PPS-JPK, 2021 WL 2632441, at *2 (N.D. Ind. June 25, 2021) (quoting *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018)). Thus, bare or conclusory allegations that an employer's violations of the FLSA were willful are sufficient at the pleading stage for application of the three-year statute of limitations, and any disputes over willfulness are more

properly resolved by the trier of fact after discovery. *See id.* ("While Kammer's allegations relating to willfulness are somewhat conclusory, they are sufficient at this stage in the proceedings. Discovery will be needed to determine whether [defendant] violated the FLSA, and if so whether it did so willfully."); *Diaz v. E&K Cleaners, Inc.*, No. 16-cv-07952, 2018 WL 439120, at *4 (N.D. Ill. Jan. 16, 2018) ("[C]ourts in this district have determined that bare allegations of willfulness are sufficient to stave off statute of limitations challenges at the pleadings stage.").

Plaintiff's allegations of willfulness here are somewhat conclusory: he suggests that Defendants willfully failed to pay wages by failing to keep accurate time records as required by the FLSA. (Dkt. 51 ¶ 44). In light of the caselaw cited above suggesting that even bare or conclusory allegations of willfulness are permitted, the Court finds the allegations are sufficient at the pleading stage to allow Plaintiff to avail himself of the three-year statute of limitations. Whether Defendants violated the FLSA and did so willfully are questions for the ultimate trier of fact.

The Court acknowledges that the application of the three-year statute of limitations only gets Plaintiff so far. Plaintiff has alleged that Defendants violated the FLSA by failing to pay him from March 17, 2017, through August 31, 2018. But even under the three-year statute of limitations, Plaintiff can only bring claims for violations of the FLSA that occurred on or after August 10, 2018—which is three years before the date the original complaint was filed. Limiting the damages period from August 10, 2018 to August 31, 2018—coupled with the fact that Plaintiff can only seek payment of *minimum* wages under the FLSA—significantly narrows the scope of Plaintiff's FLSA claim. But the short length of the damages period and the modest amount of any potential recovery are not relevant to the Court's analysis here. All that matters for the instant motion to dismiss is whether Plaintiff has sufficiently stated an FLSA claim and if any claims are

timely. For the reasons explained above, Plaintiff has stated a timely claim for a willful violation of the FLSA .

In sum, Defendants' motion to dismiss is denied as to Count I of the Third Amended Complaint, though the claim is narrowed in light of this Opinion. Plaintiff has stated a claim for a violation of the FLSA based on Defendants' alleged failure to pay minimum wages from August 10, 2018, through August 31, 2018, subject to a determination by the ultimate finder of fact that any violation was willful.

## B. Plaintiff's IWPCA Claim

Count II of the Third Amended Complaint alleges that Defendants violated the IWPCA by failing to properly compensate Plaintiff for the actual time he worked each week. (Dkt. 51 ¶ 51.) Defendants argue that Plaintiff's IWPCA claim must be dismissed because the statute does not apply to work performed outside of Illinois, and at all relevant times Plaintiff was a resident of Indiana and performed his work for FitzMark from his home. (Dkt. 52 at 5.) The Court agrees.

The IWPCA states that the act "applies to all employers and employees in this State." 820 Ill. Comp. Stat. 115/1. Applying that plain language, the Seventh Circuit has held that a plaintiff may not bring a claim under the IWPCA if they were not a resident of Illinois and they performed no work in Illinois during the time period they allege the employer violated the statute. *See Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) ("The dismissal of the [IWPCA] claim was clearly correct. . . . The plaintiff is not, and at no time relevant to this suit was he, a resident of Illinois. Nor did he perform any work in Illinois . . . . [W]e do not think the statute has an extraterritorial reach. Its evident purpose is to protect employees *in Illinois* from being stiffed by their employers . . . ."); *see also Adams v. Catrambone*, 359 F.3d 858, 864 (7th Cir. 2004)

10

(further clarifying that "nonresidents who perform their work in Illinois for an instate employer" are covered by the IWPCA).

Under *Glass* and *Adams*, then, Plaintiff can only state a claim under the IWPCA if he lived in or performed work in Illinois during the period between March 17, 2017, and August 31, 2018, when he alleges he was not paid. But, as Defendants note in their motion, Plaintiff alleges that he is a resident of Indiana and does not allege that he resided in Illinois or that he performed any of his work for FitzMark in the state. (Dkt. 52 at 5.) Indeed, in his response brief, Plaintiff appears to expressly concede that all his work for FitzMark was performed remotely from his home in Indianapolis: "Plaintiff continued to work from his home in Indianapolis for 14 months without compensation. During that time, Plaintiff provided support services to Fitzmark's transportation and supply chain operations including customer development plans." (Dkt. 57 at 7.) As Plaintiff has not alleged that he performed any work in Illinois during the relevant period, he has failed to state a claim under the IWCPA, in light of the Seventh Circuit's rulings in *Glass* and *Adams*.

Plaintiff attempts to get around the holdings in *Glass* and *Adams* by pointing to the broader purpose of the IWPCA to "provide employees with a cause of action for the timely and complete payment of earned wages or final compensation," and goes on to argue that the statute contains no provision stating that a plaintiff must perform a certain amount of work in Illinois in order to be covered under the IWPCA. *Id.* at 7-8. Further, Plaintiff argues that the relevant Illinois Department of Labor regulations were amended in 2014 to suggest that work performed outside of Illinois could be protected under the IWPCA. *Id.* at 9 (citations omitted).

Regarding the Illinois Department of Labor regulations, as Defendants note in their reply brief, the provisions Plaintiff cites to address the state agency's jurisdiction to review claims for wages, which has little bearing on whether an employee who lives and performs all their work

outside Illinois has standing to bring a civil suit under the IWCPA. (Dkt. 65 at 3-4.) Specifically, Plaintiff cites to 2014 amendments to the Illinois Department of Labor regulations implementing the IWCPA that modified the scope of the agency's authority to assert jurisdiction over wage claims. Ill. Admin. Code tit. 56, § 300.440. In short, the prior version of regulations stated that the agency did not have authority over claims when an out-of-state employee performed "a substantial portion" of their duties outside of Illinois, where the amended regulations indicate the agency has authority over claims for work performed outside of Illinois as long as the employer is located in Illinois. *See* Ill. Admin. Code tit. 56, § 300.440(d) ("If the work is performed outside the State of Illinois, the employer must be located in Illinois in order for the Department to assert jurisdiction over the claim.); (Dkt. 57 at 8-9.) But again, the plain language of the provision indicates it concerns the *agency's* jurisdiction over IWPCA wage claims, and that does not answer the question of whether Plaintiff can state a civil claim in federal court. On that question, Defendants correctly note that this Court is bound to apply the controlling Seventh Circuit precedent in *Glass*, as reaffirmed in *Adams,* which requires the dismissal of an IWPCA claim where the plaintiff does not allege that they lived in Illinois or performed any work here. *See Cilliers v. Cobalt Holdings, Inc.*, No. 18 C 2428, 2019 WL 1514977, at *3 (N.D. Ill. Apr. 8, 2019) ("[T]his Court is bound to follow *Glass*. Because plaintiffs do not allege that they are residents of Illinois or performed any work here, they have not stated viable IWPCA claims.").

Plaintiff is correct that subsequent caselaw has suggested there is no particular "quantum" of work that must be performed in Illinois by an out-of-state resident. *See Yata v. BDJ Trucking Co.*, No. 17 cv 3503, 2018 WL 3303290, at *5 (N.D. Ill. July 5, 2018) ("No court of binding authority has set forth a minimum quantum of work in Illinois to qualify as an employee under the [IWPCA].") In fact, one decision from the Appellate Court of Illinois has suggested that the

IWCPA "may apply in certain circumstances even where all of the work is performed outside of this state." *Watts v. ADDO Mgmt., L.L.C.*, 97 N.E.3d 75, 82 (Ill. App. Ct. 2018). However, the Seventh Circuit has not addressed *Watts*, and this Court may not rely on a state court appellate decision over binding Seventh Circuit authority. *See Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722, at *3 (N.D. Ill. Jan. 11, 2022) ("This Court is bound by the Seventh Circuit's interpretation of Illinois law even if a subsequent Illinois Appellate Court decision is contrary to the Seventh Circuit's interpretation ); *see also Cilliers*, 2019 WL 1514977, at *3 (declining to apply *Watts,* noting that the Court was bound to apply the Seventh Circuit precedent in *Glass*).[4] In the absence of further guidance from the Seventh Circuit, courts in this District generally hold that, at the initial pleading stage, a non-resident employee need not plead that they performed any specific amount of work in Illinois, but rather, "need only plead that they have done *some* work for an Illinois employer while physically present in Illinois to state an IWPCA claim." *Niiranen*, 2022 WL 103722, at *3 (emphasis in original) (collecting cases). "Arguments about whether *enough* work was performed in Illinois are more appropriately raised at the summary judgment stage." *Id.*

This post-*Glass* caselaw indicating there is no minimum quantum of work in Illinois that must be alleged is of little help to Plaintiff, however, because he does not allege that he performed *any* work while physically present in Illinois. Absent contrary authority from the Seventh Circuit indicating that the IWCPA can apply to a 100% remote employee then, this Court is bound by *Glass*, and Plaintiff's IWCPA claim must be dismissed. *See Cilliers*, 2019 WL 1514977, at *3.

---

[4] As the Court in *Niiranen* noted, "Only a subsequent ruling by the Illinois Supreme Court would supersede the Seventh Circuit's interpretation of state law." *Niiranen,* 2022 WL 103722, at *3 (citations omitted).

Count II of the Third Amended Complaint for claims under the IWCPA are therefore dismissed with prejudice.[5]

### C. Plaintiff's Claim for Unjust Enrichment and Quantum Meruit

Finally, Defendants argue that Plaintiff's claim for unjust enrichment should be dismissed for three reasons: (1) no independent cause of action exists for unjust enrichment under Illinois law; (2) the FLSA preempts unjust enrichment claims seeking the same remedy that the FLSA provides; and (3) Plaintiff has pled insufficient facts to state a claim for unjust enrichment. (Dkt. 52 at 7-8.) In his response, Plaintiff directly responds only to Defendants' second argument regarding preemption and maintains that his unjust enrichment claim is not preempted because he seeks wages not recoverable under the FLSA, *i.e.*, wages not classified as minimum or overtime wages. Notably, both parties only address whether Plaintiff has stated a claim for unjust enrichment, and neither party specifically discusses whether Plaintiff has stated a claim for quantum meruit, which is a separate cause of action and is referred to in the header of Count III in Plaintiff's complaint. (*See* Dkt. 51 at 7.)

The Court will address Defendants' preemption argument first. Plaintiff is correct that, to the extent his unjust enrichment claim seeks unpaid wages "that cannot be classified as either minimum wage or overtime pay," his claim is not preempted by the FLSA. *Dawkins v. NR 1 Transport, Inc.*, No. 20 C 4063, 2021 WL 4125086, at *7 (N.D. Ill. Sept. 8, 2021); *see also Nicholson v. UTi Worldwide, Inc.*, No. 3:09–cv–722–JPG–DGW, 2010 WL 551551 (S.D. Ill. Feb. 12, 2010) ("To the extent [plaintiff] seeks pay for 'gap time,'" that is, compensation for hours

---

[5] Because the Court finds that *Glass* resolves the issue, it need not address the other grounds for dismissal Defendants raise in their motion. The Court further notes that Plaintiff has not asked for leave to amend and makes no suggestion in his response that he could plead any allegations showing he performed any work in Illinois. Given that Plaintiff is already on his Third Amended Complaint and has not sought leave to amend further, the Court finds that dismissal of this count with prejudice is appropriate.

worked before the employee reaches the overtime threshold and at a rate that averages to more than the minimum wage, "that claim is not cognizable under the FLSA and may survive."). Plaintiff's unjust enrichment and quantum meruit claim seeks the "fair market value of [his] services at the time they were furnished." (Dkt. 51 ¶ 61.) Thus, at this stage at least, Plaintiff seeks unpaid wages outside of what is covered by the FLSA, which means his claim is not preempted. Indeed, Defendants appear to abandon their preemption argument in their reply brief, as they do not respond to the substance of Plaintiff's argument raised in his response. The Court thus concludes that, insofar as Count III of the Third Amended Complaint seeks wages that cannot be classified as either minimum wage or overtime pay, the claim is not preempted by federal law and may proceed.

The Court next turns to Defendants' arguments that there is no independent cause of action for unjust enrichment under Illinois law, and that, even if there is, Plaintiff has failed to state a claim. Plaintiff does not directly address Defendants' arguments, other than to state in conclusory fashion that he has "sufficiently pleaded facts necessary to survive a motion to dismiss." (Dkt 57 at 11.) Defendants are correct that the failure to respond to an argument ordinarily operates as a waiver of any opposition. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011). On the other hand, it is Defendants that bear the burden of persuasion on their motion to dismiss, not the Plaintiff or the Court. *See Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008) ("On a motion to dismiss, defendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court.") (citing *Yeksigian v. Nappi*, 900 F.2d 101, 104-05 (7th Cir.1990)). The Court is thus not required to dismiss Plaintiff's unjust enrichment claim solely based on waiver if the Court finds that Defendants have not persuasively demonstrated that Plaintiff has failed to state a claim. *See Gallardo v. Chi. Transit Auth.*, No. 15

CV 7458, 2016 WL 7049055, at *3 (N.D. Ill. Dec. 5, 2016) ("This Court is not required to dismiss the complaint based on waiver, especially in light of this Court's finding that [defendant] has not presented a *plausible* reason for dismissing the complaint based on causation, which is adequately pled."). The Court will thus address the merits of Defendants' arguments and ultimately, for the reasons stated below, the Court finds that Defendants have failed to meet their burden to demonstrate the legal insufficiency of Plaintiff's claim for unjust enrichment and quantum meruit.[6]

Regarding Defendants' argument that Plaintiff cannot state an independent claim for unjust enrichment, Defendants are correct that the Seventh Circuit has suggested that "[u]nder Illinois law, unjust enrichment is not a separate cause of action." *Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 739-40 (7th Cir. 2019). Rather unjust enrichment "is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law." *Mashallah, Inc. v. W. Bend Mut. Ins. Co*., 20 F.4th 311, 324 (7th Cir. 2021) (citation omitted). Generally, this means that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc*., 656 F.3d 511, 517 (7th Cir. 2011). To that end, in cases where a plaintiff alleges both statutory claims and unjust enrichment claims based on the same conduct, district courts in this Circuit generally decline to dismiss an unjust enrichment claim when the statutory claim survives a motion to dismiss. *See, e.g.*, *Bakopoulos v. Mars Petcare US, Inc*., No. 20 CV 6841, 2021 WL 2915215, at *8 (N.D. Ill. July 12, 2021) (declining to dismiss unjust enrichment claim where statutory claim based on same

---

[6] The Court cautions Plaintiff and his counsel that Plaintiff would do well in the future not to be silent in the face of potentially dispositive arguments. While the Court finds that Plaintiff has stated a claim under the liberal notice pleading standards, those standards only apply at this initial stage of the litigation.

conduct survived); *Johnston v. Kashi Sales, L.L.C.*, No. 21-CV-00441-NJR, 2022 WL 4103973, at *13 (S.D. Ill. Sept. 8, 2022) (same); *but see Dawkins*, 2021 WL 4125086, at *8 (dismissing unjust enrichment claim in FLSA suit because "[i]t does not provide an independent basis for recovery"). Alternatively, when unjust enrichment is predicated on another theory of recovery, such as quasi-contract, the claim can survive, provided that the plaintiff has otherwise adequately stated a claim under that alternative theory. *See Buschauer v. Columbia College Chi.*, 579 F. Supp. 3d 1045, 1049 (N.D. Ill. 2022) (declining to dismiss complaint solely because it only referenced unjust enrichment, finding that such a claim could be predicated on the existence of a quasi-contract, but separately holding that plaintiff failed to state a claim because an express contract governed the parties' relationship).

Based on the foregoing authority, the Court declines to dismiss Plaintiff's claim for unjust enrichment. First, Plaintiff's FLSA claim has survived, therefore to the extent the unjust enrichment claim is based on the same conduct that forms the basis of the statutory claim, the claims "stand or fall" together, and therefore both survive. *See Cleary*, 656 F.3d at 517.[7] Second, even setting aside Plaintiff's FLSA claim, the Court finds that Plaintiff has otherwise stated a claim for relief for unjust enrichment or for quantum meruit under a quasi-contract theory.

Plaintiff alleges the unjust enrichment and quantum meruit claims as alternative claims "[i]n the event it is determined that no employment relationship existed between Plaintiff and Fitzmark as alleged in Counts I and II." (Dkt. 51 at 7.) To state a claim for unjust enrichment in Illinois, a plaintiff "must allege that the defendant has unjustly retained a benefit to the plaintiff's

---

[7] Defendants cite to *Dawkins*, a decision from this district, where the court dismissed an unjust enrichment claim in an FLSA case. 2021 WL 4125086, at *8. This decision conflicts with others from this Circuit declining to dismiss such claims where the related statutory claim survived a motion to dismiss. *See, e.g.*, *Bakopoulos*, 2021 WL 2915215, at *8; *Johnston*, 2022 WL 4103973, at *13. Regardless, as explained further herein, even setting aside the survival of the FLSA claim, Plaintiff has also stated a claim under a quasi-contract theory of recovery.

detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *See Cardin v. NewRez LLC*, No. 21-CV-03350, 2022 WL 16540183, at *4 (N.D. Ill. Oct. 28, 2022) (citation omitted). Similarly, "[t]he theory of recovery in quantum meruit is that the defendant has received a benefit which would be unjust for him to retain without paying for it." *Rishell v. Alvion Properties, Inc.*, 569 B.R. 322, 330 (S.D. Ill. 2017) (citing *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (1994). "Quasi-contractual relief is available when one party has benefited from the services of another under circumstances in which, according to the dictates of equity and good conscience, he ought not retain such benefit." *Id.*

In the Third Amended Complaint, Plaintiff incorporates by reference all his prior allegations regarding his work performed for Defendants, and adds that he conferred a substantial benefit upon Defendants and that his expectation of payment was reasonable. (Dkt. 51 ¶¶ 55-56.) Plaintiff further alleges that Defendants refused to pay Plaintiff the fair market value of the services rendered to them, or in other words, they "have retained the benefit of the bargain with Plaintiff . . . [and] have been unjustly enriched at the expense of the Plaintiff." *Id.* ¶¶ 57-58, 62.

The Court finds the above allegations are sufficient to state a claim under either an unjust enrichment or quantum meruit theory of recovery based on a quasi-contract. Defendants assert in passing that Plaintiff's allegations fail to state a claim because he "[fails] to plausibly identify the benefit he provided, the detriment he suffered, and support for the damages sought." (Dkt. 52 at 7-8.) But the benefit Plaintiff provided to Defendants is obvious on the face of the complaint: Plaintiff performed work for the benefit of Defendants' business. So too is the alleged detriment: Plaintiff performed this work for a period of approximately 17 months between March 2017 and August 2018 without receiving any wages, despite having a reasonable expectation that he would

18

be paid. Plaintiff thus has clearly alleged that he performed services for Defendants and Defendants retained a benefit (the value of Plaintiff's services) that would be unjust for them to retain without paying for it. This is sufficient to state a claim. *See, e.g.*, *Labriola*, 2016 WL 1106862, at *6 (holding that plaintiffs stated a claim for quantum meruit and unjust enrichment based on their allegation that the defendant employers received the benefit of plaintiffs' services without providing compensation). As to Defendants' argument about the lack of support for the alleged damages sought (i.e., the actual fair market value of the services), that is a matter for the factfinder to determine after discovery.

The Court observes that Plaintiff's Third Amended Complaint, and his briefing on the specific issue of his claims for unjust enrichment and quantum meruit, are not models of clarity or specificity. But again, at this stage it is Defendants who bear the burden of persuasion on the motion to dismiss to demonstrate the legal insufficiency of Plaintiff's allegations. *See Reyes*, 585 F. Supp. 2d at 1017. And the Court must draw all reasonable inferences from the facts pled in the Third Amended Complaint in Plaintiff's favor. *See Kubiak*, 810 F.3d at 480-81. Further, Plaintiff is not required to clearly articulate or plead specific legal theories. *See Shah*, 314 F.3d at 282. In light of these principles, the Court is satisfied that Plaintiff has pled sufficient facts stating a claim for unjust enrichment or quantum meruit under a quasi-contract theory of recovery. Whether Plaintiff can ultimately establish the elements of these causes of action, and, if he does, how his damages might be calculated in light of his alternative claims under federal and state law, are questions for later stages in these proceedings. At this initial pleading stage, what matters is whether he has stated a facially plausible claim that provides notice to Defendants of the basis of the claim. The Court finds that he has.

### Conclusion

For all the foregoing reasons, Defendants' motion to dismiss (Dkt. 52) is granted in part and denied in part. Defendants must answer the non-dismissed portions of the Third Amended Complaint within 21 days of this order. An initial status conference is set for April 28, 2023 at 10:00 a.m. via WebEx video conference. By April 21, 2023, the parties shall file a joint status report with a proposed case management schedule. In light of the resolution of the instant motion, the Court strongly encourages the parties to consider settlement. The joint status report should update the Court on the parties' settlement negotiations and whether they are interested in a settlement conference with the assigned magistrate judge.

ENTERED: 3/30/23

_____
Nancy L. Maldonado
United States District Court Judge